

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00106-CV

Barry **BROOKS**, Heston C. King, Stefen Douglas Brooks, Johanna Barton,
and Jesse Rodriguez Benavides,
Appellants

v.

**EXCELLENCE MORTGAGE, LTD.**; LADTD-1, LLC; Grothues Financial, Ltd.; Grothues
Brothers Management I, LLC; and Georgetown Mortgage, L.L.C.
Appellees

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-01173
Honorable Cathleen M. Stryker, Judge Presiding[1]

### OPINION ON MOTIONS FOR REHEARING

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice, retired (not participating)
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  December 9, 2015

REVERSED AND REMANDED

On April 1, 2015, we granted Appellants' motion for rehearing, withdrew our May 30,

2014 opinion and judgment, and issued a substitute opinion and judgment in this appeal.

Thereafter, Appellants Barry Brooks, Heston C. King, Stefen Douglas Brooks, and Jesse

---

[1] The Honorable Cathleen Stryker signed the July 18, 2012 order granting in part Excellence's traditional motion for summary judgment.  The Honorable Peter Sakai, Presiding Judge of the 225th Judicial District Court, signed the severance order which made the July 18, 2012 order final.

Rodriguez Benavides (collectively Brooks Appellants), and Appellant Johanna Barton, filed a motion for rehearing. Appellees Excellence Mortgage, Ltd.; LADTD-1, LLC; Grothues Financial, Ltd.; Grothues Brothers Management I, LLC; and Georgetown Mortgage, L.L.C. also filed a motion for rehearing. We grant the motions for rehearing, withdraw our opinion and judgment of April 1, 2015, and substitute this opinion and judgment in their stead.

We reverse the trial court's order granting Appellees' traditional motion for summary judgment on Appellants' breach of contract, antitrust, and interference with prospective business relations claims. We remand this cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Appellants worked as loan officers for Excellence during 2010. In September 2010, Excellence's owners began restructuring the company. The restructuring included discussions with Georgetown Mortgage, LLC and, ultimately, the creation of a new entity, MG Mortgage.

During the last week of September 2010, Excellence's loan officers were trained by a corporate trainer from Georgetown. The loan officers were asked to sign employment applications for Georgetown. The Brooks Appellants contend the terms of their possible employment at Georgetown were much less favorable than the terms under which they were employed at Excellence. The Brooks Appellants each decided not to accept employment at Georgetown.

### A.    Appellants Leave Excellence

Appellant Johanna Barton was terminated from her employment with Excellence not later than September 28, 2010. On October 1, 2010, the Brooks Appellants each tendered signed letters of resignation to Excellence. By October 4, 2010, Appellants had accepted employment as loan officers at Premier Nationwide Lending. When Appellants left their employment with Excellence, a "pipeline" of ninety-one interim and permanent residential mortgage loan transactions, in varying

stages of development, had not yet been finalized.  None of the ninety-one loans about which Appellants complain closed and funded on or before October 1, 2010.

Appellants notified at least some of the Excellence pipeline loan customers, with whom they had been working, of their move to Premier.  Appellants contend that each pipeline customer chose to transfer their files from Excellence to Premier so the customer could work with the same loan officers to complete their transactions.  Some pipeline customers asked in writing for their files to be transferred to Premier.

**B.      Procedural Background**

On October 7, 2010, Excellence filed suit for a temporary restraining order, injunction, and damages against Premier and each appellant.  The trial court granted a temporary restraining order enjoining Appellants and Premier from, among other things, using Excellence's allegedly confidential information to contact any of Excellence's customers served by Appellants while employed by Excellence.  Shortly thereafter, Excellence settled its claims against Premier.  Premier returned the transferred pipeline loan files and agreed not to accept further transfers from Excellence.  Appellants assert Appellees' actions prevented them from earning commissions on the pipeline loans and they suffered severe financial losses.

In March 2011, Appellants filed a counterclaim[2] against Excellence asserting various causes including breach of contract, unlawful restraint of trade, and interference with prospective business relations.  Excellence moved for traditional and no-evidence summary judgment against Appellants' breach of contract, interference, and antitrust claims, and Robin Morton's[3] unjust enrichment claim. The trial court granted a motion to consolidate Appellants' separate suit against

---

[2] In their first amended counterclaim, Appellants added LADTD-1, LLC; Grothues Financial, Ltd.; Grothues Brothers Management I, LLC; and Georgetown Mortgage, LLC as defendants.
[3] Robin C. Morton was the former president of, and mortgage broker for, Excellence Mortgage Ltd.

LADTD-1, LLC, Grothues Financial, Ltd., and Grothues Brothers Management I, LLC into the suit underlying this appeal. Thereafter, Georgetown Mortgage, L.L.C., LADTD-1, LLC, Grothues Financial, Ltd., and Grothues Brothers Management I, LLC filed answers and counterclaims against Appellants. Appellees moved for traditional and no-evidence summary judgment against Appellants' claims. Appellants filed a response and moved for traditional and no-evidence partial summary judgment against Appellees' claims.

After a hearing, on July 18, 2012,[4] the trial court granted summary judgment for Appellees against Appellants' claims of (1) breach of contract for loans closed and funded after October 1, 2010, (2) antitrust, and (3) interference with prospective business relations claims. It denied Appellees' motion against Morton's unjust enrichment claim and each point in Appellants' traditional and no-evidence summary judgment motions. Thereafter, the trial court severed all the issues disposed of by its July 18, 2012 order into the suit underlying this appeal.

### SCOPE OF REVIEW

The first issue we address is whether this court may review the denial of Appellants' motions for summary judgment.

Appellants argue that because both sides moved for summary judgment, this court "should review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (reviewing a final judgment based on competing motions for summary judgment). Appellees argue that the only issues in this appeal are those disposed of by the trial court's July 18, 2012 order. On this question, we agree with Appellees.

---

[4] In a Rule 11 agreement, the parties agreed the trial court would consider only Excellence's traditional motion; it would not consider Excellence's no-evidence motion.

**A.   Summary Judgment Order**

In its July 18, 2012 order, the trial court ruled on Appellees' traditional motion and Appellants' traditional and no-evidence motions.

*1.   Appellees' Traditional Motion*

As counter-defendants, Appellees moved for traditional summary judgment against Appellants' claims for (1) breach of contract for loans closed and funded after October 1, 2010, (2) antitrust violations, and (3) interference with prospective business relations, and against Morton's claim for unjust enrichment.

*2.   Appellants' Traditional, No-Evidence Motions*

As defendants, Appellants moved for traditional and no-evidence summary judgment on Appellees' claims of (1) breach of fiduciary duty, (2) breach of contract as to "confidential information," (3) tortious interference with prospective contractual relations, (4) misappropriation of trade secrets, (5) breach of settlement agreement, (6) fraud by nondisclosure (credit card use), and (7) breach of fiduciary duty (credit card use).

*3.   Trial Court's Decisions*

The trial court granted Appellees' motion against Appellants' claims but denied Appellees' motion against Morton's claim.  It denied Appellants' motions against each of Appellees' claims.

**B.   Severance Order**

After the trial court ruled on the summary judgment motions, Appellants moved to "sever the claims dismissed by the [July 18, 2012] Order" so they could seek appellate review.  The trial court granted the motion.  In its order, the trial court severed "all the issues disposed of" by its July 18, 2012 order "so as to allow the summary judgment to become final and appealable."

## C.    Severed Issues

In its express language, the order severed only "the issues disposed of by the [July 18, 2012 Summary Judgment] Order."  The summary judgment order granted Appellees' motion against Appellants' breach of contract, antitrust, and interference with prospective business relations claims.  By definition, the trial court adjudicated those claims as a matter of law—and disposed of them.  *See* TEX. R. CIV. P. 166a(c); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).

On the other hand, when it denied (1) Appellees' motion for summary judgment on Morton's claim and (2) Appellants' motions for summary judgment against Appellees' seven claims, the trial court did not adjudicate the merits of those claims; it merely denied any immediate disposition of those claims based on the parties' then-pending motions.  *See Lehmann*, 39 S.W.3d at 205 ("An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims.").  Thus, Morton's unjust enrichment claim against Appellees and Appellees' seven claims against Appellants were not disposed of by the July 18, 2012 order.  *See id.*

## D.    Issues to Review

Because they were disposed of by the summary judgment order, Appellants' breach of contract, antitrust, and interference with prospective business relations claims were severed into the underlying cause in this appeal.  Morton's unjust enrichment claim against Appellees and Appellees' seven claims against Appellants were not severed into the underlying cause.  They remain in cause number 2010-CI-16915, and they are not before us.  Thus, we may not review the trial court's denial of Appellants' traditional and no-evidence motions for summary judgment.

### STANDARD OF REVIEW—TRADITIONAL MOTION

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant movant may make that showing by conclusively disproving at least one essential element of the plaintiff's claim. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

To determine whether the defendant movant met its burden, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

If the evidence shows there are genuine issues of material fact on each essential element the movant asserts it has conclusively disproved, the motion must be denied. *See Elliott–Williams*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77.

### APPELLEES' TRADITIONAL MOTION

In their traditional summary judgment motion, Appellees moved for summary judgment against Appellants' claims for breach of contract for loans closed and funded after October 1, 2010, anti-trust violations, tortious interference with prospective business relations, and Morton's claim of unjust enrichment. We begin our analysis with the breach of contract claims.

**E.      Brooks Appellants' Breach of Contract Claims against Appellees**

The trial court granted Appellees' traditional motion for summary judgment against the Brooks Appellants' breach of contract claims for commissions earned on the pipeline loans—those loans that closed and funded after October 1, 2010.  The trial court did not grant summary judgment on the Brooks Appellants' breach of contract claims for loans closed and funded on or before October 1, 2010; those claims are not before us.  On the Brooks Appellants' breach of contract claims that are before us, the parties disagree on the voluntariness of the Brooks Appellants' terminations, the effective dates of their terminations, and what compensation, if any, Appellees owe the Brooks Appellants.

*1.  Arguments of the Parties*

Each of the Brooks Appellants concedes they submitted a letter of resignation effective October 1, 2010.  They insist that it was not until after their resignations were submitted that they came to understand Excellence had ceased operations on September 22, 2010—nine days before their resignations otherwise became effective.  The Brooks Appellants argue that when Excellence ceased operations, their employment with Excellence was involuntarily terminated.  They argue their resignation letters had no effect because they could not have resigned from a company that did not exist.  They also asserted they were "forced out of employment by [the] sudden radical reduction in their benefits and overall compensation."  Thus, they contend, Excellence breached their employment contracts by failing to pay commissions they earned, including those associated with approximately ninety-one pipeline loans.

Excellence counters it did not breach the employment agreements because the Brooks Appellants were not entitled to commissions on loans that closed and funded on or after the date they resigned.  Excellence asserts the Brooks Appellants were paid for employment through September 30, 2010, and they were properly compensated in accordance with the company's

Production Personnel Compensation Plan. Excellence contends the Brooks Appellants voluntarily terminated or resigned and were therefore bound by the compensation provisions for voluntary termination. Appellees moved for summary judgment on the Brooks Appellants' breach of contract claims.

### 2. *Summary Judgment Evidence*

In their traditional motion for summary judgment, Appellees proffered the following summary judgment evidence.

#### a. Kevin Sullivan Deposition

In his deposition, Sullivan testified that for the period in question, he was the Chief Financial Officer of Excellence Mortgage. Excellence compensated its loan officers in accordance with the Production Personnel Compensation Plan. The Plan applied to all of its loan officers including each of the Brooks Appellants.

#### b. Letters of Resignation

The Brooks Appellants submitted letters of resignation dated October 1, 2010. In their virtually identical letters, each asked to be paid their "commissions due for August and September 2010 closed loan files" "per my executed compensation plan with Excellence Mortgage."

#### c. Employment Contract Documents

Excellence proffered copies of Employment Agreements for Robin C. Morton, Heston C. King, Barry A. Brooks, and Stefen Brooks; Confidentiality Agreements for January M. Goette and Johanna Barton; and a Production Personnel Compensation Plan for Heston King.

### 3. *Brooks Appellants' Breach of Contract Claims*

We begin our review by determining whether Appellees met their burden to conclusively disprove any essential element of the Brooks Appellants' breach of contract claims. *See Elliott-Williams*, 9 S.W.3d at 803.

### a.  Elements of Breach of Contract

The elements of a breach of contract claim are "'(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.'" *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.) (quoting *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.)). Appellees moved for summary judgment asserting the Plan is a valid contract which defines its obligations to the Brooks Appellants, and it did not breach the Plan.

We turn to the applicability and provisions of the Plan.

### b.  Production Personnel Compensation Plan Applies to Loan Officers

The summary judgment evidence contains a Plan signed by Heston King; no other Plans were submitted. In the Brooks Appellants' letters of resignation, each asked for payment in accordance with "my executed compensation plan with Excellence Mortgage, Ltd." Consistent with the letters of resignation, Sullivan's affidavit states that all the loan officers signed a Production Personnel Compensation Plan with the same terms as those in Heston King's plan.

Sullivan's statement was uncontroverted, "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *See* TEX. R. CIV. P. 166a(c); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

Therefore, we conclude that each Brooks Appellant signed a Plan with the same terms as shown in Heston King's Plan, and the Plan's provisions apply to each of the Brooks Appellants.

### c.  Loan Officers were Involuntarily Terminated

In their affidavits, the Brooks Appellants state they were involuntarily terminated because (1) Excellence ceased operations sometime before October 1, 2010, and thus their letters of

resignation were ineffective as a matter of law, and (2) their benefits and compensation were radically reduced. In Stefen D. Brooks's affidavit, he stated the Georgetown employment agreements the loan officers were told to sign "were blank as to the commissions to be paid." He also added the following:

> In response to our repeated questions about compensation, we were told by Roy Jones, president of Georgetown, and Kevin Sullivan, CFO of all the Grothues companies, that we would no longer have a draw available against pending commissions; we would no longer have a 401(k); we would no longer be provided a company credit card for expense account; and they needed more time to determine what our commissions would be. Additionally, the health insurance offered would cost much more than the Excellence plan; and we would be required to use our personal credit cards for company expenses.

Although Kevin Sullivan stated that the Brooks Appellants resigned voluntarily, under the applicable standard of review, we take as true the Brooks Appellants' affidavits and conclude they raised a genuine issue of material fact on whether they were involuntarily terminated. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

We next examine the Plan to determine which of its provisions apply to the Brooks Appellants' terminations.

### d. Production Personnel Compensation Plan

Plan Section VII, Termination of Employment, addresses a loan officer's termination.

#### (1) Voluntary Terminations

Section VII.A. provides terms applicable "[i]n the event of voluntary termination." For voluntary terminations, the Plan requires Excellence to pay commissions the loan officer earned "on any loan closed and funded (as provided above in Section IV) up to and including the effective date of termination." The Plan also states the "Production Manager has the discretion to pay all, or a portion of, the commissions on loans that close and fund after the effective date of the Loan Officer's termination."

(2)     Terminations for Cause

Section VII.B. provides terms applicable "[i]n the event a Loan Officer is terminated by the Company for cause."  In such a case, the Plan states "[n]o further commissions will be paid to the Loan Officer."

(3)     Involuntary Terminations by Excellence

Section VII states compensation terms for voluntary terminations and terminations for cause.  But the Brooks Appellants assert, and we agree, the Plan is silent on what terms apply if a loan officer's at-will employment is involuntarily terminated by Excellence "for any reason or no reason at all," including for Excellence's convenience.[5]  *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (addressing at-will employment doctrine).

e.     Appellees Failed to Conclusively Disprove Breach

Appellees moved for traditional summary judgment against the Brooks Appellants' breach of contract claims on the ground that their employment was voluntarily terminated on or before October 1, 2010, and under the Plan terms, Excellence did not owe the Brooks Appellants any commissions for loans closed and funded after October 1, 2010.

But Appellees did not conclusively establish that the Plan's voluntary termination provision applies to the Brooks Appellants.  Therefore, Appellees failed to conclusively prove they do not owe the Brooks Appellants any compensation for loans closed and funded after October 1, 2010.  Because Appellees failed to conclusively disprove the essential element of breach, they were not entitled to judgment as a matter of law against the Brooks Appellants' breach of contract

---

[5] We use the term convenience as a substitute for "any reason or no reason at all," *see O'Bryant*, 18 S.W.3d at 216 (addressing at-will employment doctrine), and to distinguish an involuntary termination for Excellence's convenience from an involuntary termination for cause.

claims for commissions on loans closed and funded after October 1, 2010. *See* TEX. R. CIV. P. 166a(c); *Elliott-Williams*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77.

**F.      Johanna Barton's Breach of Contract Claim against Appellees**

Unlike the Brooks Appellants, Johanna Barton did not submit a letter of resignation. But like the Brooks Appellants, Barton also sued Appellees for, inter alia, breach of contract.[6] She alleged Excellence failed to pay her commissions she earned on loans closed and funded before, on, and after the effective date of her termination. The trial court granted summary judgment against Barton's breach of contract claim for commissions earned on loans closed and funded after October 1, 2010.[7]

In Sullivan's affidavit, he avers Barton was terminated on September 28, 2010. Under the Plan, if a loan officer is terminated for cause, she is not entitled to any further commissions. But Sullivan's affidavit does not say Barton was terminated for cause, and Sullivan's deposition comment that Barton's termination was related to her attitude does not conclusively prove she was terminated for cause. The Plan is silent on what compensation Excellence would owe Barton if Excellence involuntarily terminated her employment for Excellence's convenience.

Making all reasonable inferences and resolving doubts in Barton's favor, *see Nixon*, 690 S.W.2d at 548–49, we conclude Appellees did not conclusively disprove that Barton was entitled to any further commissions, *Elliott-Williams*, 9 S.W.3d at 803. Thus, Appellees failed to conclusively disprove the element they challenged—that they breached the Production Personnel Compensation Plan—and they were not entitled to judgment as a matter of law against Barton's

---

[6] Barton's interference and antitrust claims are addressed with the other appellants' similar claims.
[7] The trial court did not grant summary judgment on Barton's claim for loans closed and funded on or before October 1, 2010, and that claim is not before us.

breach of contract claim for commissions on loans closed and funded after October 1, 2010. *See* TEX. R. CIV. P. 166a(c); *Elliott-Williams*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77.

**G.      Appellants' Antitrust Claims against Appellees**

After Excellence sought an injunction to prevent Appellants from contacting pipeline loan customers, Appellants countersued Excellence.  In their third amended original counterclaim, Appellants claimed that Appellees engaged in a "contract, combination, or conspiracy in restraint of trade as prohibited by [section] 15.05." *See* TEX. BUS. & COM. CODE ANN. § 15.05 (West 2011). Specifically, Appellants alleged Appellees used "knowingly false allegations made under oath" in its lawsuit against them and used the lawsuit "as a justification for their unlawful refusal to transfer the [pipeline] loans as requested by the prospective borrowers."  Appellees moved for summary judgment against Appellants' antitrust claims on the basis that, as a matter of law, the employee nondisclosure and confidentiality provisions in Appellants' employment and confidentiality agreements were not non-compete covenants and could not unlawfully restrain trade.  The trial court granted Appellees' motion against Appellants' antitrust claims.

   *1.      Summary Judgment Burdens*

To be entitled to summary judgment, Appellees had to conclusively disprove at least one essential element of Appellants' claims.  *See Elliott-Williams*, 9 S.W.3d at 803; *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam).  Appellees had to show there were no genuine issues of material fact and they were entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Elliott-Williams*, 9 S.W.3d at 803.  Appellees were not entitled to judgment against Appellants' antitrust claims if, for each essential element Appellees asserted they conclusively disproved, the summary judgment evidence shows a genuine issue of material fact exists. *See Elliott-Williams*, 9 S.W.3d at 803.

2.      *Summary Judgment Evidence Requirements*

Appellants provided summary judgment evidence in their own motion and in response to Appellees' motion for summary judgment. We review all the summary judgment evidence "in the light most favorable to the party against whom the summary judgment was rendered." *See Mann Frankfort*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)); *see also Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

Appellants' evidence included affidavits showing Appellees' actions caused an adverse effect on competition. Although Appellants are interested witnesses, their affidavits—when examined to determine whether they raise a fact issue sufficient to defeat Appellees' traditional motion—are not required to be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies." *See* TEX. R. CIV. P. 166a(c); *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 827 (Tex. App.—Fort Worth 2008, no pet.); TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 6.03[9][a] (3d ed. 2015).

In reviewing Appellants' affidavits, unless an affiant's statement is entirely conclusory, *see Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997), we take the statement as true, and resolve all doubts and make every reasonable inference in the nonmovant's favor, *Nixon*, 690 S.W.2d at 548–49.

Before we examine the evidence, we review the elements of an antitrust claim.

3.      *Texas Antitrust Act*

The Texas Free Enterprise and Antitrust Act of 1983 prohibits "[e]very contract, combination, or conspiracy in restraint of trade or commerce." TEX. BUS. & COM. CODE ANN. § 15.05(a); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990); *see* TEX. BUS. &

COM. CODE ANN. § 15.01 (Title of Act). "To establish that a defendant contracted, combined, or conspired in restraint of trade in violation of section 15.05(a), a plaintiff must show that the alleged contract, combination, or conspiracy is unreasonable and has an adverse effect on competition in the relevant market." *Marlin v. Robertson*, 307 S.W.3d 418, 427 (Tex. App.—San Antonio 2009, no pet.).

### 4. *Evidence of an Antitrust Violation*

Appellants' summary judgment evidence of Appellees' alleged antitrust violations includes affidavits from Robin C. Morton, John H.P. Hudson, and Stefen D. Brooks. To determine whether Appellees conclusively disproved any essential element of Appellants' antitrust claims, we review the summary judgment evidence for each essential element. *See Elliott-Williams*, 9 S.W.3d at 803; *see also G & H Towing Co.*, 347 S.W.3d at 297.

### a. Unreasonable Practice

The first element is an unreasonable practice. *Marlin*, 307 S.W.3d at 427. To evaluate reasonableness, courts divide practices into two categories; the first category is those that are illegal per se. *Id.* (citing *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)). The second category comprises those "whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons for its imposition." *Id.* To this second category, "courts apply the 'rule of reason' under which the fact-finder weighs all the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.* (citing *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)).

### (1) Robin Morton's Affidavit

Appellant Robin C. Morton was the former president and mortgage broker of Excellence. In her affidavit, she stated the following. As Excellence's president, she oversaw all facets of

Excellence's operations for approximately nine years. She was responsible to ensure "that all loans were property and legally handled as per state and federal regulations." She noted a loan customer may ask the originating mortgage company to transfer their loan file to another mortgage company, and the transferring company is legally obligated to transfer the file. Until the transferring company receives the customer's signed request, it may not "share, release or disclose the information contained in a loan file in any way with the transferee mortgage company." She insisted Georgetown acquired the pipeline loan customer files from Excellence "without any type of transfer letter." When Excellence turned over the pipeline loan customer files to Georgetown, "Georgetown immediately filed an assumed name certificate and continued to do business under the name of Excellence Mortgage so as to represent to pipeline customers that their mortgage company had not changed." The pipeline loan customers, and others, "were intentionally misled to believe that they were still working with the same originating mortgage company, Excellence Mortgage, [Ltd.]" Excellence "falsely claimed [it] had the sole right to serve the pipeline customers," and it unlawfully compelled Premier to not accept any loan transfers for pipeline customers. By their actions to prevent Appellants from competing with Georgetown for the pipeline loan customers, Appellees had an adverse effect on the construction-to-permanent loan market in the greater San Antonio area.

(2) John H.P. Hudson's Affidavit

In John H.P. Hudson's affidavit, he stated the following. He is the Area Manager with Premier Nationwide Lending, and he has over ten-years' experience in the mortgage business. A prospective borrower is not obligated to remain with the original mortgage company. The customer may transfer their file at any time, but the transferring mortgage company may not transfer the file without the prospective borrower's written request.

(3)     Stefen D. Brooks's Affidavit

In Stefen D. Brooks's affidavit, he stated the following. Georgetown transferred all the pipeline loan customer files from Excellence "to its own computer system without obtaining a file transfer request from any of the loan customers." Excellence and Georgetown's attorneys sent letters to Appellants "telling us we could not serve [the pipeline] customers" to prevent Appellants from servicing the loans.

(4)     Kevin Sullivan's Affidavit, Deposition

In Kevin Sullivan's deposition and affidavit, he stated that Appellants had violated the nondisclosure and confidentiality provisions of their employment agreements by taking and using Excellence's confidential information to solicit pipeline customers. Excellence provided copies of an Employment Agreement and Confidentiality Agreement, and Sullivan stated each Appellant signed these documents.

(5)     Appellees Failed to Meet Their Burden

Considering all the summary judgment evidence, *see Mann Frankfort*, 289 S.W.3d at 848, and taking as true the evidence favorable to Appellants, *see Nixon*, 690 S.W.2dd at 548–49, we conclude there is some evidence that Excellence transferred files to Georgetown without first obtaining the pipeline loan customers' written requests, such transfers are prohibited under state or federal regulations, Georgetown and Excellence worked together to effect the transfers, and Appellees sought to prevent Appellants from competing for the pipeline loan customers. Thus, the summary judgment evidence raises a genuine issue of material fact on whether the complained of actions amount to an unreasonable practice. *See Marlin*, 307 S.W.3d at 427. Although Appellees argued and proffered summary judgment evidence that Excellence was merely protecting its confidential information under valid nondisclosure and confidentiality agreements,

we conclude Appellees failed to conclusively disprove the essential element of unreasonable practice. *See id.*

    b.   <u>Adverse Effect on Competition in the Market</u>

  "To establish a violation under the rule of reason, a plaintiff must prove the restrictive practice has an adverse effect on competition in the relevant market." *Id.* at 429. The plaintiff must "prove what market it contends was restrained," prove "that the defendants played a significant role in the relevant market," and proffer "evidence of 'demonstrable economic effect.'" *Id.*

      (1)  Market Restrained, Defendant's Role

  In Morton's affidavit, she identified the restrained market as the construction-to-permanent loan market in the greater San Antonio area, and she stated Excellence had about fifty percent of that market. In Hudson's affidavit, he similarly described Excellence's niche market as arranging interim and permanent financing for new home builders. He stated that Excellence had a "substantial share" of this niche market in the Bexar County area.

      (2)  Evidence of Demonstrable Economic Effect

  Morton and Hudson stated that Excellence's actions had an adverse effect on Excellence's portion of the residential mortgage market in the San Antonio area. Both affiants had many years' experience as senior officers for mortgage companies operating in the greater San Antonio area. Morton identified "loan products offerings, interest rate options, [and] closing cost packages" as items affected by competition. Accepting as true all the evidence favoring Appellants, we may reasonably infer that Appellees' actions to prevent competition for pipeline loan customers in the greater San Antonio area would result in a demonstrable economic effect. Although "an inference of *possible* effect" is not enough to establish a violation, *Coca-Cola Co.*, 218 S.W.3d at 689, a

reasonable inference of demonstrable economic effect is sufficient to raise a fact issue, *see Humphrey v. Balli*, 61 S.W.3d 519, 523 (Tex. App.—San Antonio 2001, no pet.).

        c.       <u>Fact Issue Raised</u>

Excellence argued and proffered evidence to attempt to conclusively disprove any unreasonable practice on its part. *See Elliott-Williams*, 9 S.W.3d at 803 (conclusively disprove element burden); *see Marlin*, 307 S.W.3d at 429 (antitrust elements). However, taking as true the evidence favoring Appellants and making reasonable inferences in their favor, we conclude the evidence raises a genuine issue of material fact on each element of the antitrust claims. *See Nixon*, 690 S.W.2d at 548–49. Thus, Appellees were not entitled to summary judgment on Appellants' antitrust claims. *See Elliott-Williams*, 9 S.W.3d at 803; *Nixon*, 690 S.W.2d at 548–49.

## H.      Appellants' Claims of Interference with Prospective Business Relations

Appellants also sued Appellees for tortious or unlawful interference with prospective business relations.

### 1.      *Appellants' Live Pleadings*

In their third amended original counterclaim, Appellants claimed

> [Appellees] have intentionally interfered with [the pipeline loan customer] relationships by unlawful conduct, including the sending of threatening letters, making false statements to prospective borrowers, and the filing of this groundless injunction suit against [Appellants] . . . [and] misrepresented . . . to Premier and to the prospective borrowers that the prospective borrowers legally could not do business with Premier. Such intentional tortious conduct was relied on by the prospective borrowers to their detriment.

### 2.      *Appellees' Arguments*

Appellees moved for summary judgment against Appellants' tortious interference claims; they argued Excellence's "conduct of using the legal process to prevent the loan officers from taking [the pipeline loan] customers is neither unlawful nor tortious." Appellees argue the trial

court properly granted their traditional motion for summary judgment against Appellants' tortious interference with prospective business relations claims.

*3.* *Elements of Tortious Interference with Prospective Business Relations*

A tortious or unlawful interference with prospective business relations claim has multiple elements. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (listing five elements); *Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same). One of the essential elements is that "the defendant's conduct was independently tortious or unlawful." *Coinmach Corp.*, 417 S.W.3d at 923; *accord Plotkin*, 304 S.W.3d at 487; *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). A defendant's conduct may comprise tortious interference if the defendant makes fraudulent statements about a plaintiff to a third person to affect a prospective business relationship. *See Sturges*, 52 S.W.3d at 726.

*4.* *Pleadings Raise Underlying Tort of Fraud*

Appellants' pleadings allege Appellees committed tortious or unlawful interference with prospective business relations. To support their claim of underlying independently tortious or unlawful conduct, Appellants alleged, inter alia, (1) Appellees' injunction lawsuit was groundless and brought in bad faith, and (2) Appellees intentionally made false statements to pipeline loan customers, misrepresented to Premier and the pipeline loan customers that the pipeline loan customers could not legally do business with Premier, and the pipeline loan customers relied on Appellees' false statements.

We construe pleadings liberally in favor of the pleader unless a party specially excepts to the pleadings. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). The record does not show that Appellees specially excepted to Appellants' pleadings regarding their interference claims. *See id.* Thus, Appellants' pleadings gave Appellees fair notice of the

underlying tort of fraud. *See* TEX. R. CIV. P. 47(a) (fair notice pleadings); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (elements of fraud); *Horizon/CMS Healthcare*, 34 S.W.3d at 896–97 (fair notice, construe pleadings liberally).

### 5. *Appellees Failed to Meet Their Burden*

In their motion for summary judgment, Appellees argued that Excellence's injunction lawsuit allegedly enforcing its rights was—as a matter of law—"neither unlawful nor tortious."[8] But Appellees' summary judgment burden was to conclusively disprove *any* underlying tort or unlawful conduct raised by Appellants' pleadings. *See Elliott-Williams*, 9 S.W.3d at 803. Appellees argued Excellence's injunction lawsuit could not be the underlying tort or unlawful conduct, but it did not address the alleged fraud or provide evidence to conclusively disprove fraud. Having reviewed the evidence under the appropriate standard, we conclude the summary judgment evidence does not conclusively disprove fraud. *See id.*

Because Appellees did not meet their burden to conclusively disprove the essential element on which they moved for summary judgment, summary judgment on Appellants' tortious interference with prospective business relations claims was not proper. *See id.*

### CONCLUSION

When the trial court granted Appellees' traditional motion for summary judgment against Appellants' breach of contract, antitrust, and interference with prospective business relations claims, the trial court disposed of those issues. When the trial court severed the issues disposed of by its summary judgment order, only Appellants' three claims were severed, and we review only those issues.

---

[8] Because Excellence failed to address Appellants' claim of fraud as the underlying tort in the tortious interference claim, we do not reach the question of whether Excellence's injunction lawsuit was groundless or brought in bad faith.

Because Appellees failed to conclusively disprove any essential element of Appellants' claims, they were not entitled to judgment, and the trial court erred by granting Appellees' motion on those issues. Accordingly, we reverse the trial court's order granting Appellees' motion for summary judgment on Appellants' breach of contract, antitrust, and interference with prospective business relations claims, and we remand this cause to the trial court for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice