

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00465-CV

**HOUSING AUTHORITY OF THE CITY OF ALICE**,
Appellant

v.

**TEXAS MUNICIPAL LEAGUE SELF-INSURANCE FUND**
aka Texas Municipal League Intergovernmental Risk Pool,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 15-03-54404-CV
Honorable Oscar (O.J.) Hale, Judge Presiding [1]

Opinion by:    Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Irene Rios, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

This appeal arises from a dispute over the amount owed for storm damages to the properties of the insured, appellant Housing Authority of the City of Alice, which appeals the trial court's order denying its motion for summary judgment and granting the motion for summary judgment filed by its insurer, appellee Texas Municipal League Joint Self-Insurance Fund.  We affirm.

---

[1] The Honorable Oscar Hale presided over the underlying case by assignment.

**BACKGROUND**

The Housing Authority of the City of Alice ("the Housing Authority") owns more than 120 properties, primarily dwellings, in the City of Alice. In 2013, the Housing Authority purchased an insurance policy from Texas Municipal League Joint Self-Insurance Fund ("the Fund") to insure against "the risk of direct physical loss of or damage to [the Authority's] property." In case of a loss, the policy's Property Coverage Document, General Conditions, paragraph IV.D indicates the Housing Authority is to "render a signed and sworn proof of loss to the Fund . . . within 60 days." If the Housing Authority and the Fund disagree on the amount of loss, paragraph IV.E establishes an appraisal process to determine the amount of loss.

On May 27, 2014, a storm damaged approximately 128 of the Housing Authority's properties. The following day, the Housing Authority reported the damage to the Fund via telephone. Two days after the storm, the Housing Authority sent a claim notice[2] to the Fund via facsimile. Later that same day, the Housing Authority sent a second claim notice to the Fund via facsimile.

On June 2, 2014, the Fund retained an independent adjuster who inspected the Housing Authority's properties and reported his findings. On June 16, 2014, the Housing Authority sent a third report of loss to the Fund via facsimile. On July 9, 2014, Senior Claims Analyst James Kaltman informed the Housing Authority via email that he received the adjuster's report and findings. Based on the adjuster's findings, the Fund determined the Housing Authority's reimbursable amount of loss, less the applicable deductible, was $429,143.72. The Fund tendered payment to the Housing Authority by check on July 18, 2014; with the check, the Fund sent its proposed proof of loss for the Housing Authority to sign. On the proposed proof of loss, the Fund

---

[2] The Housing Authority characterizes the notices as "reports of loss," however the forms were titled "Claim Notice." For sake of clarity, in the Background section we refer to the documents as they are titled in the record.

stated "The Replacement Cost loss of property at the time of loss was $869,093.20" and "ACV Loss and Damage known at the time of the loss $430,143.72."

The Housing Authority did not sign the Fund's proposed proof of loss. Instead, the Housing Authority disputed the proposed amount of loss and asserted its actual losses exceeded $3 million. To support its claim, the Housing Authority took steps to invoke the appraisal process described in the policy. When the Fund resisted invoking the appraisal process, the Housing Authority sued the Fund for breach of contract. The Housing Authority alleged the Fund failed to pay the amount of loss the Housing Authority claims it is entitled to based upon the Housing Authority's appraisal. In turn, the Fund asserted the Housing Authority had no right to invoke the appraisal process. The Fund argued a timely-filed, sworn proof of loss is an appraisal process prerequisite, and the Housing Authority did not timely submit a compliant sworn proof of loss.

Thereafter, both parties filed motions for summary judgment. In its motion for summary judgment, the Fund raised the following grounds: the Housing Authority's claim is foreclosed by the Board of Trustees' decision; no evidence exists that the Housing Authority submitted a timely and compliant sworn proof of loss within 60 days after the date of its claimed loss and the Fund established as a matter of law that the Housing Authority did not timely submit a compliant proof of loss; the Housing Authority's claim is barred by res judicata and the prohibition against claim splitting; the Housing Authority's claim should be dismissed because there is no evidence of recoverable damages under the contract and no evidence exists that the Housing Authority's alleged losses were not caused by any excluded perils; the Fund's payment affirmative defense has been conclusively proven; and the Housing Authority has not performed all required contractual covenants.

In its Third Motion for Summary Judgment, the Housing Authority asserted no material facts are in dispute and that all four elements of its breach of contract claim against the Fund have

been established. The Housing Authority further alleged the Fund waived immunity by entering into a contract with the Housing Authority.[3]

The trial court entered a final judgment and order granting the Fund's motion for summary judgment and denying the Housing Authority's third motion for summary judgment. In its order, the trial court noted it "considered that both parties agree that there is no genuine issue of material fact." The Housing Authority now appeals, challenging the trial court's summary judgment order.

## SUMMARY JUDGMENT

### Standard of Review

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). A defendant may obtain summary judgment by, among other things, conclusively negating at least one element of the plaintiff's cause of action. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

We generally review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Henkel v. Norman*, 441 S.W.3d 249, 250 (Tex. 2014) (per curiam). When, as here, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, we review the

---

[3] In its motion for summary judgment, the Housing Authority includes a section titled Affirmative Defense of Immunity and in which it discusses the Fund's waiver of immunity. We note, however, that the Housing Authority does not argue on appeal that the Fund asserted governmental immunity or that it was granted summary judgment on the basis of governmental immunity.

summary judgment evidence presented by both parties and determine all questions presented. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

ANALYSIS

**Proof of Loss Compliance**

We begin with the Housing Authority's first and second issues, in which the Housing Authority argues its compliance was established as a matter of law in two ways: first, by the Fund's failure to file a verified denial as required by Texas Rule of Civil Procedure 93; and, second, by the evidence showing the Housing Authority substantially complied with the policy provision. In response, the Fund asserts the Housing Authority did not submit a "contractually compliant proof of loss, which is a condition precedent to any contract claim." We note these issues correspond with the Fund's summary judgment grounds alleging the Housing Authority failed to satisfy the proof of loss condition precedent forecloses its claim and did not perform all the required contractual covenants as an essential element of its breach of contract claim.

*Rule 93*

In issue one, the Housing Authority contends it established proof of loss compliance as a matter of law because the Fund failed to file a verified denial pursuant to Texas Rule of Civil Procedure 93 alleging that the Housing Authority did not comply with the required proof of loss precedent. Texas Rule of Civil Procedure 93(12) requires that a pleading "[t]hat notice and proof of loss or claim for damage has not been given as alleged" must be verified. TEX. R. CIV. P. 93(12). "A denial of such notice or such proof shall be made specifically and with particularity." *Id*. Thus, if a defendant denies a plaintiff's allegations that the plaintiff gave proof of loss, the defendant must file a verified denial. *See Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 170 (Tex. 1965) (examining the former version of Rule 93(12)). If a defendant does not file a verified denial of

proof of loss, the court shall presume notice and not admit any evidence to the contrary. TEX. R. CIV. P. 93(12).

Although the Housing Authority did not specifically allege in its Second Amended Petition, which was filed on October 10, 2015, that it submitted proof of loss to the Fund, it did allege that "all conditions precedent to the [Housing Authority]'s right to recover upon the contract have been performed or have occurred." On November 2, 2015, rather than filing an amended answer, the Fund filed a supplement to its original answer. Therefore, the Fund's Original Answer remained applicable to the Housing Authority's second petition. In its Original Answer, the Fund specifically denied the Housing Authority satisfied the proof of loss condition precedent. In paragraph 9 of its Original Answer, the Fund alleges that "[a]s of July 26, 2014, which was 60 days after the [Housing] Authority alleged May 27, 2014 loss, the [Housing] Authority had not submitted a <u>sworn proof of loss</u> to support any claim for additional self-insurance benefits." (emphasis in original). The Director of Legal Services for the Fund, David Reagan, attested to the facts contained in paragraph 9 in an affidavit attached to the Fund's Original Answer. We determine this constitutes a verified denial for purposes of Rule 93(12). Therefore, notice of proof of loss is not presumed and, given the Fund's denial, the Housing Authority must present evidence of compliance with the proof of loss requirements.

Accordingly, we overrule the Housing Authority's first issue.

### *Substantial Compliance*

In its second issue, the Housing Authority contends compliance with the proof of loss condition precedent is established through evidence showing it substantially complied with the policy's requirements. Paragraph IV(D) of the policy's Property Coverage Document, General Conditions section indicates the Housing Authority is to "render a signed and sworn proof of loss to the Fund . . . within 60 days." That proof of loss should state "the place, time, and cause of the

loss, damage, or expense … the value of the property involved in the loss, and the amount of loss, damage, or expense."

Here, the Housing Authority sent the Fund three claims notices via facsimile after notifying the Fund of the damage verbally via telephone. The first claims notice, sent on May 29, 2014, noted "80% of damages to Development Units of PHA" and "wind/hail roof damage, fences, broken windows, siding on Glendale Home, broken window warehouse, fascia [and] trim damage." The second claims notice, also sent on May 29, 2014, noted "hail and wind damage to roof, siding and fascia, broken windows [and] electrical boxes — for all properties, Heritage House, TX-2, TX-4, TX-6, scattered sites." The third claims notice, sent on June 16, 2014 listed the address of thirteen properties on Tony Street and noted "wind/hail damage roofs, windows [and] doors." Prior to the receipt of the third claims notice, the Fund sent its own adjuster to inspect the Housing Authority's properties. The adjuster provided the Fund with his report on June 9, 2014. On July 18, 2014, which was 52 days after the loss, the Fund forwarded its proposed proof of loss for the Housing Authority to sign along with a check for what the Fund determined was the reimbursable amount of loss. The Housing Authority then invoked the appraisal process, to which the Fund objected on the basis the Housing Authority did not comply with the proof of loss requirement.

The Housing Authority points out that before the 60th day following the loss, the Fund received claim notices filed by the Housing Authority, arranged for its own adjuster to inspect the damage, determined the amount of its liability under the policy, and tendered a check for that amount accompanied by its own proposed proof of loss statement. The Housing Authority argues this indicates the Fund had notice, as well as all the information it needed to determine its liability,

and that this also demonstrated the Fund acknowledged its liability under the policy.[4] Relying on the decision in *Henry v. Aetna*, the Housing Authority concludes this demonstrates there was substantial compliance with the purpose of the proof of loss provision as a matter of law. *See Henry v. Aetna Cas. & Sur. Co.*, 683 S.W.2d 583 (Tex. App.—Texarkana 1982, writ ref'd n.r.e).

In *Henry v. Aetna*, Henry was injured in a car accident. *Id*. at 583. Henry's insurance policy with Aetna required "that within six months of the accident written proof of claim be given to the insurer providing it with full particulars of the injuries, treatment, and expenses incurred." *Id*. at 583-84. While Henry was still hospitalized, his mother reported the accident to an Aetna agent. *Id*. at 584. Henry also reported the accident to the same agent when he was released from the hospital. *Id*. The agent prepared an accident notice, which was forwarded to Aetna. *Id*. The notice included the following information: the insured's name, address, and phone number; the accident time, location, and circumstances; the car information and estimate of probable total damage; coverage limits, including personal injury protection limits; the name of the person who reported the accident and the agent to whom it was reported; and the statement "Jack Henry hospitalized with a collapsed lung and broken ribs." *Id*. The lower court found in favor of Aetna on the basis that Henry did not timely file the proof of loss required by his policy. *Id*. The appellate court, however, reversed, determining the notice Henry initially provided Aetna gave Aetna the necessary information it needed to investigate the accident and claims, as well as ultimately determine its liability for policy benefits. *Id*. Therefore, the court concluded, Henry substantially complied with the proof of loss provision. *Id*. at 584-85.

"Substantial compliance with proof of loss provisions in insurance policies is all that is required." *Id*. at 584. "Substantial compliance' means compliance with the essential requirements,

---

[4] To the extent the Housing Authority appears to argue the Fund waived the proof of loss requirement, that issue is not before this court and will not be addressed.

whether of a contract or of a statute." *Santos v. Guerra*, 570 S.W.2d 437, 440 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.).

In this case, the claims notices sent to the Fund did not comply with the essential proof of loss requirements under the policy. Unlike the notice in *Henry*, the claims notices in this case lacked information required by the insurance policy. The claims notices in this case did not include the value of the property or estimate of damages. The claims notices noted damage to "all property" or "80%" of a particular group of properties and listed certain properties, but did not include a listing of the damages to all of the affected properties. Therefore, we conclude the Housing Authority did not conclusively establish substantial compliance with the proof of loss provision.[5]

Appellant's second issue is overruled.

### Breach of Contract

In its fourth issue, the Housing Authority contends the trial court erred by overruling its summary judgment motion because the Housing Authority conclusively established all four elements of its breach of contract claim as a matter of law. In its motion for summary judgment, the Fund contends "[t]he [Housing] Authority's contract claim should be dismissed because [the Housing Authority] did not submit the contractual proof of loss that is a condition precedent to any such claim."

To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract;

---

[5] Because we conclude the Housing Authority did not establish the minimal essential requirements so as to establish substantial compliance, we need not discuss whether the proof of loss being sworn is an essential element of the contract.

and (4) the plaintiff sustained damages as a result of the defendant's breach. *Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied).

The Property Coverage Document, General Conditions, I. SUIT AGAINST THE FUND section provides that "[n]o suit or action on this Agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Member shall have fully complied with all the requirements of this Agreement." We have previously determined the Housing Authority did not conclusively establish compliance with the proof of loss provision, which is a condition precedent to the Housing Authority's ability to bring suit against the Fund. Therefore, the Housing Authority has not conclusively established all elements of its breach of contract claim.

Issue four is overruled.

Taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving doubts in the nonmovant's favor, we conclude summary judgment was properly granted in favor of the Fund on its summary judgment grounds alleging the Housing Authority did not satisfy an essential element of its breach of contract claim. *See Frost Nat'l Bank*, 315 S.W.3d at 508. We further conclude the Housing Authority's motion for summary judgment on its breach of contract claim was properly denied for the same reason.

### Remaining Issues

Because we have determined the trial court's summary judgment order properly granted summary judgment in favor of the Fund and properly denied the Housing Authority's summary judgment motion, we have "addressed every issue raised and necessary for appeal," and we need not address the Housing Authority's remaining issue. *See* TEX. R. APP. P. 47.1.

### CONCLUSION

The trial court's summary judgment order is affirmed.

Irene Rios, Justice