

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WILLIAM DAVIDSON, | § | No. 08-24-00035-CV |
| Appellant, | § | Appeal from the |
| v. | § | 38th District Court |
| JIM HEINE, 7 GRAND PLUS INTEREST, LLC, 1449 INTEREST, LLC, and LINDA KOEHL, | § | of Uvalde County, Texas |
| | § | (TC# 2023-06-34991-CV) |
| Appellees. | § | |
| | § | |

## MEMORANDUM OPINION

This appeal concerns the sale of the 7G Ranch (the Ranch) in Uvalde, Texas. [1] In anticipation of listing the property for sale, Jim Heine, the Ranch's owner, contracted with William Davidson to perform landscaping and other labor on the Ranch. [2] After Davidson completed and was compensated for his labor, he expressed to Heine that he was interested in buying the Ranch

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] Jim Heine was the sole owner of 7 Grand Plus, LLC (formerly known as 149 Interest, LLC). 7 Grand Plus owned the Ranch. In this memorandum opinion, we refer to Heine and the LLCs together as Heine.

himself. After expressing his interest, Davidson and Heine began to negotiate terms. They exchanged a handshake, emails, text messages, and a final, proposed contract for the sale.

But Heine never completed the sale with Davidson, and instead sold the Ranch to a third party who made a higher offer. Davidson sued both Heine and Linda Koehl, the owner of the brokerage authorized to list the Ranch for sale. Against Heine, Davidson brought a claim for breach of contract. Against Koehl, Davidson brought claims for tortious interference with an existing contract and tortious interference with prospective relations. Against both Heine and Koehl, Davidson brought claims for statutory fraud, fraudulent inducement, negligence, negligent misrepresentation, and violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA).[3] Pursuant to Texas Rule of Civil Procedure 91a, Heine moved to dismiss all of Davidson's causes of action. Koehl moved to dismiss the causes of action for fraudulent inducement, fraud in a real estate transaction, negligence, negligent misrepresentation, and DTPA claims. Koehl did not move to dismiss the tortious interference claims. The trial court granted Heine's and Koehl's motions, dismissing all of Davidson's claims with prejudice and awarding costs and attorney's fees to Heine and Koehl. This appeal followed.

In three issues, Davidson asks this Court to find that the trial court erred in granting Heine and Koehl's motions to dismiss and awarding attorney's fees. We affirm in part, vacate in part, and reverse and remand in part.

---

[3] Davidson also brought claims against both Heine and Koehl for money had and received, agency, civil conspiracy, ratification, promissory estoppel, contorts, violations of the Texas Real Estate License Act, and violations of the Texas Uniform Electronic Transaction Act. Davidson does not assert that the trial court erred in dismissing these claims, and they are not before us in this appeal.

# I. BACKGROUND

### A. Heine prepares to sell the Ranch.

When Heine decided to sell the Ranch in early 2023, Koehl recommended that he hire Davidson to perform work on the property before listing it. Koehl introduced Davidson to Heine—the two had no prior personal or business relationship. Soon after he was hired, Davidson expressed an interest in purchasing the Ranch, but Heine indicated he needed some time to think about his asking price. Davidson completed the agreed work over a period of several days and was paid by Heine on May 24, 2023.

That same day, Heine, as President of 7 Grand Plus, LLC, entered into a Farm and Ranch Real Estate Agreement Exclusive Right to Sell (the Listing Agreement) with Riata Realty, Koehl's brokerage. The Listing Agreement named Georgia Molloy as the listing agent, and authorized Riata Realty to list the Ranch at a sales price of $2,550,000 beginning on May 24, 2023.[4] Under the Listing Agreement, Heine agreed to pay a broker's commission equal to 5% of the sales price, to be split evenly between the seller's and buyer's agents.

### B. Davidson and Heine negotiate

According to Davidson's affidavit, on May 24, 2023—before Heine entered the Listing Agreement—he offered to sell the Ranch to Davidson for $2,300,000. Davidson agreed, and the two shook hands on the deal. Heine contacted his attorney and informed Davidson that his attorney suggested they draft a letter of intent containing the purchase offer and terms. At Heine's direction, Davidson hired an attorney that afternoon to draft the necessary documents. That afternoon, Koehl sent Davidson the following texts expressing her disappointment upon learning that Heine was selling the Ranch to Davidson:

---

[4] Molloy is not a party to this litigation.

| Koehl: | You leaving me out of real estate deals now? |
|---|---|
| Koehl: | It doesn't cost you anything to include me |
| Koehl: | [Heine] is signing the listing agreement anyway. |
| Koehl: | And [Molloy] will be your realtor unless you ask me to |
| Davidson: | What are you talking about?? |
| Koehl: | Heine says he is selling the ranch to you and that you sent a letter of intent. He is still listing the ranch with Riata . . . |
| | |
| Koehl: | You don't need my permission for anything |
| Davidson: | You're correct |
| Koehl: | Bill, it seems unfair for me to recommend you for a job and you and Heine make a deal when you know we are listing it. |
| Koehl: | Now he is telling [Molloy] to list you as an exclusion. |
| Koehl: | That means that if you buy it, we don't get paid |
| Koehl: | So . . . it is disappointing |
| Davidson: | Like I said, you have the wrong information. I'm in meetings. I'll give you a call later |

The next day, Heine emailed Davidson to inform him that he "received a call from [Koehl] today," and after conferring with his lawyer, he needed to increase the purchase price by 5% due to the broker's commission required under the Listing Agreement. Heine apologized for the "misunderstandings," stated that he felt "legally and morally obligated to honor the commission," and reaffirmed that, "[a]s mentioned," he would finance $1,000,000 of the purchase price at 6%, amortized over 20 years, with a 3-year balloon. That evening, Heine informed Davidson via text that his attorney suggested "a 5 day period for a letter of intent to purchase the property." He indicated that he was anxious to proceed because he had other potential purchasers. Davidson responded that he, too, was in a hurry to close the deal. The two exchanged emails—Heine provided the Ranch's acreage, promised to send "a crude plot," and referred Davidson to the tax records for a better description.

During the evening of May 26, 2023, Davidson reached out to Koehl via text based on his understanding that she would be drafting the contract. He asked her to "draw up" the contract and provided her with his address. Koehl confirmed that she was writing the contract, and she asked

some follow-up questions about the financing terms, which Davidson immediately confirmed. After texting Koehl, Davidson responded to Heine's May 25, 2024 email and accepted the increased price and financing terms without objection, responding informally, "No worries Jim." He also informed Heine that he had instructed Koehl to draw up the contract before coming to the realization that Koehl represented Heine. He suggested that Heine follow up with Koehl and instruct her to draw up the contract.

Koehl sent Davidson a Texas Real Estate Commission (TREC) contract, which included a proposed Buyer's Representation Agreement, via email the next morning. According to Davidson, he forwarded the contract to his attorney that day. After sending the contract, Koehl reached out to Molloy to inform her that "Bill Davidson texted last night and accepted Mr. Heine's offer to sell at $2,457,000." She also sent an email to Heine advising him that "[Davidson] has decided to move forward with your offer." At 3:40 that afternoon, when Koehl had not received the signed contract from Davidson, she texted Molloy, advising her that she should continue to show the property to potential buyers and indicated that she intended to do the same. Molloy replied that she already had a showing scheduled for the 31st in four days.

Heine responded to Koehl's email the next day, stating "I assume you are representing [Davidson] and [Molloy is representing] me. I need the contract to forward to my lawyer and [I need to] make arrangements to move [the] rest of [my] belongings." Heine then e-mailed Molloy requesting a closing date based on Koehl's confirmation that Davidson was going ahead with his offer. Heine stated in the email that he "would rather communicate as little with [Koehl] as possible."

On May 31, 2023, Koehl texted Davidson to follow up by letting him know that "Heine is looking for the contract." Davidson responded with a screenshot of an email showing that he

forwarded her the contract. Koehl replied that she could not open the link. She asked Davidson to send her his attorney's contact info so she could question the attorney directly. At 3:00 p.m., Koehl texted Davidson to confirm that she had received the contract and sent it back to him.

### C. Heine sells the Ranch to Larson 5 Ranches LP

Unbeknownst to Davidson, Heine received another offer from Larson 5 Ranches LP to purchase the property on or about May 30, 2023. Heine forwarded the offer to Molloy, who then forwarded it to attorney Taylor Yarborough for review. Yarborough and Molloy exchanged a series of emails over the price and financing in the new offer. When Yarborough expressed confusion, stating that he spoke with Heine a few days prior and confirmed that it would be a cash deal with Heine financing $1,000,000 of the total purchase price, Molloy explained that the financing deal was with a "different buyer," and the new deal with Larson 5 Ranches was an all-cash offer with a 1031 exchange.

The morning of June 1, 2023, Koehl followed up with Davidson again, asking if they could "get the contract approved and signed" that day. Davidson did not immediately respond, and two hours later, Koehl texted Davidson to inform him that Heine received and was reviewing a full-price offer. She expressed uncertainty about the negotiations, stating "I don't know if he will honor your offer or not." Davidson responded: "I have done nothing wrong in this deal. I sent you the mark-ups [to the proposed contract for the sale of the Ranch] in a timely fashion due to the long weekend. You sent it back to me and I . . . sent it to my lawyer yesterday." According to Davidson, Koehl informed him that the Ranch was under contract with another buyer at Chicago Title. Believing that Heine repudiated the contract, Davidson immediately sought legal counsel.

Heine and Davidson resumed communication through counsel. Heine took the position that Koehl represented Davidson in the sale, and that because Davidson never executed the contract

6

Koehl proposed, the parties never entered a contract. Without a contract, Heine was free to accept the cash offer. Davidson attempted to resolve the dispute by offering full performance on the contract. Although Davidson's counsel acknowledged that the parties did not fully execute a TREC that would satisfy the statute of frauds, he also alleged exceptions. First, that the parties' texts and emails showed Heine acknowledging Davidson's acceptance and the repudiating the deal by selling to a third party, and second, that Davidson had reasonably relied on Heine's representation to his detriment by hiring legal counsel and forgoing the purchase of other properties.

Unable to resolve the dispute, Davidson filed a *lis pendens* on the Ranch and made multiple demands on that Heine honor the contract or delay the sale to the third-party. That same day, Heine executed a General Warranty Deed granting his interest in the Ranch to Larson 5 Ranches.

### D. Davidson files suit against Heine and Koehl

Davidson also filed suit against Heine and Koehl. As relevant to this appeal, Davidson's Third Amended Petition (TAP), the live pleading below, asserted claims for statutory fraud, fraudulent inducement, negligence, negligent misrepresentation, and DTPA violations against both Heine and Koehl. Against Heine, Davidson asserted an additional claim for breach of contract, and against Koehl two additional claims for tortious interference with an existing contract and tortious interference with prospective relations. Heine and Koehl asserted the Statute of Frauds as an affirmative defense in their respective Answers.

Both Heine and Koehl filed motions to dismiss Davidson's TAP pursuant to Rule 91a. The trial court granted the Rule 91a motions, dismissing all of Davidson's claims with prejudice.

## II. ISSUES ON APPEAL

Davidson raises three issues on appeal. First, he claims the trial court erred in granting Heine's and Koehl's Rule 91a Motions. Within this issue, Davidson asserts the following as

subsidiary issues: (1) whether his claims for breach of contract, statutory fraud, fraudulent inducement, DTPA violations, negligence, and negligent misrepresentation are factually plausible; (2) whether those same claims have a valid bases in law, and (3) whether Heine and Koehl were entitled to relief on their Statute of Frauds affirmative defense.

In his second issue, Davidson asserts that the trial court erred in dismissing his tortious interference claims against Koehl because Koehl's Rule 91a Motion did not specifically plead and argue a basis for the dismissal of those claims as required by Rule 91a.

Finally, in his third issue, Davidson asserts the trial court erred when, in granting the Rule 91a motions, it awarded attorneys' fees and costs of $36,491.41 and $14,432.50 to counsel for Heine and Koehl respectively.

## III. DISCUSSION

### A. Rule 91a

Rule 91a of the Texas Rules of Civil Procedure provides that a party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* In our review, we consider only the live pleadings as amended pleadings supersede previous versions. *See Parker v. Ohio Dev., LLC*, No. 04-23-00069-CV, 2024 WL 1864756, at *3 (Tex. App.—San Antonio Apr. 30, 2024, no pet. h.) (mem. op.) (considering only plaintiff's last amended petition in Rule 91a proceeding because it was timely filed and superseded previous petitions).

The motion to dismiss must identify each cause of action to which it is addressed and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both. *See*

8

Tex. R. Civ. P. 91a.2. In ruling on the motion, the court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action, together with any exhibits permitted by Rule 59." *Id*. 91a.6; *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021); *Strickland v iHeartMedia, Inc.*, 665 S.W.3d 739, 742 (Tex. App.—San Antonio 2023, pet. denied). In relevant part, Rule 59 allows "written instruments, constituting, in whole or in part, the claim sued on [to] be made part of the pleadings . . . for all purposes."[5] *See* Tex. R. Civ. P. 59.

A court may grant a Rule 91a motion based on a defendant's affirmative defense, when that defense is "conclusively established by the facts in a plaintiff's petition," together with inferences reasonably drawn from them. *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020); *Strickland*, 665 S.W.3d at 742. In that scenario, the court first looks to the defendant's answer to determine if the affirmative defense is properly before the court. *Bethel*, 595 S.W.3d at 656. "[S]ome affirmative defenses will not be conclusively established by the facts in a plaintiff's petition." *Id.* If the affirmative defense requires the consideration of evidence, the defense is "not a proper basis for a motion to dismiss." *Id.*

## B. Standard of review

We review de novo a trial court's ruling on a Rule 91a motion. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021); *Bethel*, 595 S.W.3d at 654. The merits of a Rule 91a motion are reviewed de novo because the availability of a remedy under the facts alleged is a question of law. *See Taylor v. Aspy*, No. 04-21-00387-CV, 2023 WL 5257677, at *3 (Tex. App.—San Antonio August 16, 2023, pet. denied) (mem. op.) (citing *In re Farmers Tex. Cty. Mut. Ins.*

---

[5] "Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition . . . made in reference to said instruments and shall be deemed a part thereof for all purposes. . . . No other instrument of writing shall be made an exhibit in the pleading." Tex. R. Civ. P. 59.

*Co.*, 621 S.W.3d at 266); *cf.*, *Aguilar v. Morales*, 545 S.W.3d 670, 676–77 (Tex. App.—El Paso 2017, pet. denied)) ("[B]oth determinations of whether a cause of action has any basis in law and in fact are legal questions[.]").

Upon review, "we consider whether the pleadings, liberally construed, allege sufficient facts to affirmatively demonstrate that the pleader is entitled to the relief requested." *Strickland*, 665 S.W.3d at 741. We "assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007).

We apply the Texas fair-notice pleading standard, under which a pleading is sufficient "if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982); *Aguilar*, 545 S.W.3d at 677. Applying the fair-notice standard, we construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the petition. *Darnell v. Rogers*, 588 S.W.3d 295, 301 (Tex. App.—El Paso 2019, no pet.) ("If a petition provides sufficient facts to give fair notice of the claim, then a motion seeking dismissal based on lack of a basis in fact should be denied."). Further, "if nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law and the motion should be denied." *Id.*

Finally, because it provides a harsh remedy, Rule 91a is strictly construed. *C.V.P.G. Fam. Tr. v. Plains Cap. Bank, Tr. of Guerra Mineral Tr.*, No. 08-23-00320-CV, 2024 WL 2445793, at *2 (Tex. App.—El Paso May 23, 2024, no pet.) (mem. op.) (citing *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 604 S.W.3d 421, 426 (Tex. App.—San Antonio 2019, orig. proceeding), *mand. granted in part* (621 S.W.3d at 261).

10

## C. The Statute of frauds

The Statute of Frauds (the Statute) requires contracts for the sale of real estate to be in writing and signed by the person charged with the promise to be enforceable. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (citing the Restatement (Second) of Contracts § 131 cmt. c (1981)); *Winkenhower v. Smith*, No. 04-15-00077-CV, 2015 WL 6900306, at *4 (Tex. App.—San Antonio November 10, 2015, no pet.) (mem. op.). To satisfy the Statute, the writing must be complete within itself and contain the essential terms of the agreement, including the names of the parties, a sufficient description of the property to be conveyed, and the price paid. *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 724 (Tex. 2020) (citing *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)); *Burrus v. Reyes*, 516 S.W.3d 170, 188 (Tex. App.—El Paso 2017, pet. denied).

"[I]n a real estate sales contract, the property to be conveyed is generally considered to be an essential term of the contract and that description of the land to be conveyed is considered essential to its enforceability." *Burrus*, 516 S.W.3d at 188. "A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008). Contracts that do not satisfy the Statute are generally unenforceable. *Simcoe v. Christopher*, No. 04-14-00735-CV, 2015 WL 4554335, at *2 (Tex. App.—San Antonio July 29, 2015, no pet.) (mem. op.).

Texas courts, however, recognize several exceptions which may remove an agreement from the Statute's bar. Davidson's TAP invokes four of them: (1) multiple writings, (2) partial performance, (3) promissory estoppel, and (4) ratification. *See Copano Energy*, 593 S.W.3d at 727 (multiple writings); *Thomas v. Miller*, 500 S.W.3d 601, 609 (Tex. App.—Texarkana 2016, no pet.)

11

(partial performance); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. 2002) (promissory estoppel); *Barrand, Inc. v Whataburger, Inc.*, 214 S.W.3d 122, 146 (ratification). Whether the facts and circumstances of a particular case falls within one of these exceptions is a question of fact reviewed de novo. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015); *Simcoe*, 2015 WL 4554335, at *2 (citing *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp*., 418 S.W.3d 172, 192 (Tex. App—Dallas 2013, pet. denied)).

## IV. ANALYSIS

### A. Point of error one

#### (1) Breach of contract

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) breach by the defendant; and (4) damages sustained because of the breach. *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). In their Rule 91a motions, Heine and Koehl asserted the Statute as an affirmative defense to the first element—contending that no enforceable contract existed between the parties. *See Bethel*, 595 S.W.3d at 653 (concluding that Rule 91a permits dismissal based on an affirmative defense). They also challenged the second element—performance—by asserting that Davidson's TAP and its attachments fail to allege that he tendered earnest money or otherwise performed under the agreement.

"Rule 91a requires a showing that there is '*no* basis in law or fact' rather than merely '*no reasonable* basis in law or fact' or '*no meritorious* basis in law or fact.'" *In re Shire*, 633 S.W.3d 19. To determine whether Davidson's TAP survives dismissal under Rule 91a, we assess whether the facts alleged, taken as true provide some basis in law and in fact to support the breach

12

of contract claim. Because Heine and Koehl asserted the Statute as a defense, Davidson's TAP must allege facts that, if true, remove the contract from the Statute's bar.

Multiple writings may be read together as a single contract so long as the contents provide the essential terms. *Copano Energy*, 593 S.W.3d at 727. Davidson's TAP exhibits contain a series text messages and emails exchanged between himself, Heine, and Koehl that together contain a property description (7G Ranch), price ($2,475,000), financing terms, and the identification of the parties and their agreement to be bound, which he alleges can substitute for a signed contract between the parties. Alternatively, Davidson's TAP alleges that he does have a signed contract that satisfies the Statute because Koehl, acting in her capacity as Heine's agent, delivered a contract via email with the intent that it be binding on the parties. Davidson argues these allegations satisfy the requirements of the Statue of frauds, or its inapplicability based on a recognized exception.

In response, Heine argues that dismissal was proper because even if this Court finds that the series of writings from Davidson's TAP are sufficient to survive dismissal at the Rule 91a stage, the agreement is nonetheless unenforceable because the property description in those writings does not satisfy the Statute's specificity requirement. While a sufficient property description is an essential term, the TAP identifies the property as "7G Ranch," provides a street address—1026 County Road 365 in Uvalde County, references the tax rolls, contains a survey plot attached to the listing agreement, and includes field notes containing a metes and bounds description from a survey performed in anticipation of the sale.

Liberally construing the TAP in Davidson's favor, taking all assertions as fact, as we must, Davidson's pleading does not conclusively establish that his breach of contract claim has no basis in fact or law based on the Statute of Frauds defense. *Bethel*, 595 S.W.3d at 656; *Strickland*, 665 S.W.3d at 742. Because Heine's and Koehl's Statute of Frauds defense requires consideration of

13

evidence, the defense is "not a proper basis for a motion to dismiss." *Bethel*, 595 S.W.3d at 656. Accordingly, dismissal of the breach of contract claim under Rule 91a was improper. Considering this conclusion, we need not reach Davidson's alternative theories of partial performance, promissory estoppel, or ratification. Tex. R. App. P. 47. We sustain Davidson's first point of error as to the dismissal of his breach of contract claim.

### (2) Fraudulent inducement

Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (quoting *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)). To state a claim for fraudulent inducement, the plaintiff must allege the elements of fraud as they relate to an agreement of the parties. Fraud requires (1) a material misrepresentation, (2) known to be false or asserted without knowledge of its truth, (3) made to induce reliance, (4) which did induce actual reliance, (5) which caused injury. *See Anderson*, 550 S.W.3d at 614. "The 'misrepresentation' occurs when the defendant falsely promises to perform a future act with no present intent to perform it." *Int'l Bus. Mach.*, 573 S.W.3d at 228 (citing *Anderson*, 550 S.W.3d at 614). "The plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the claimant would not have agreed to but for the defendant's false promise." *Id*.

Both Koehl and Heine's Rule 91a motions assert that Davidson's fraudulent inducement claim fails as a matter of law because the parties do not have a valid contract as a matter of law. *See Haase*, 62 S.W.3d at 796 ("We hold that a plaintiff cannot assert a fraudulent inducement claim in the absence of a contract."). However, whether a contract exists remains an open question, as we have only determined that Davidson's TAP pleaded sufficient facts to survive dismissal under Rule 91a. Because neither Koehl nor Heine asserted additional grounds for dismissal in their

14

respective Rule 91a motions, dismissal on this ground was improper. We sustain Davidson's first point of error as to his fraudulent inducement claim.

### (3) Statutory fraud and fraud in real estate

Texas law prohibits false representations in transactions involving real estate. *Fibela v. Wood*, 657 S.W.3d 664, 673 (Tex. App.—El Paso 2022, no pet.) (citing Tex. Bus. & Com. Code Ann. § 27.01). The elements of a statutory fraud claim based on a real estate transaction are: (1) a transaction involving real estate; (2) during the transaction, the defendant made a false representation of fact, made a false promise, or benefitted by not disclosing that a third party's representation or promise was false; (3) the false representation or promise was made for the purpose of inducing the plaintiff to enter into a contract; (4) the plaintiff relied on the false representation or promise by entering into the contract; and (5) the reliance caused the plaintiff injury. *Id.* at 673 (citing *Chapa v. Arellano*, No. 13-18-00665-CV, 2019 WL 4200299, at *2 (Tex. App.—Corpus Christi Sept. 5, 2019, no pet.) (mem. op.).

To survive dismissal, Davidson's TAP must allege and identify statements by Heine and Koehl that which "made a false representation of fact [or] made a false promise." *Id*. The TAP includes only conclusory statements, alleging that Heine and Koehl "made false representations with actual awareness of its falsity . . . for the purpose of inducing [Davidson] into entering a contract . . . made a false promise to do an act." The TAP does not allege what statements made by Koehl or Heine were actually "*mis*" representations, made with the precise intention of not fulfilling them. *See* Tex. Bus. & Com. Code § 27.01(a)(2)(B); *see also Minor v Diverse Facility Sol., Inc.*, No. 04-20-00526-CV, 2021 WL 5218000, at *2 (Tex. App.—San Antonio November 10, 2021, pet. denied) (mem. op.) (quoting *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied) (confirming "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" against a Rule 91a challenge)). Without identifying any such statements, dismissal of the statutory fraud and fraud in real estate claims on Heine and Koehl's Rule 91a motions was proper. We overrule Davidson's first point of error as to his fraud claims.

### (4) Negligent misrepresentation

To state a claim for negligent misrepresentation, a party must plead that (1) a misrepresentation or omission of a fact made by defendants in their course of business, or in a transaction in which he had a pecuniary interest; (2) the defendants supplied "false information" for the guidance of the plaintiff; (3) defendants failed to exercise reasonable care or competence in obtaining or communicating such information; and (4) plaintiff suffered pecuniary loss by justifiably relaying on the false representation. *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Other than stating "[t]he Heine Defendants believed that [Heine and Davidson] were being represented jointly by Rita [sic] Realty," Davidson's allegations simply repeat the elements of the cause of action in a conclusory fashion; he provides no information sufficient to ascertain the alleged misrepresentation or false information, how Heine or Koehl failed to exercise reasonable care in communicating such information, how Davidson relied on the allegedly false information and what pecuniary loss he suffered.[6] Accordingly, to the extent that Davidson's first point of error asserts that the trial court erred in dismissing his negligent misrepresentation claims, it is overruled.

---

[6] Davidson fails to show, however, how Heine's "belief" constituted a negligent misrepresentation or how that belief contributed to Heine's or Koehl's alleged misrepresentation.

**(5)   Negligence**

Under the fair-notice standard, to sufficiently plead a cause of action for negligence (or professional negligence), Davidson had to plead that (1) Heine and Koehl owed him a professional duty; Heine and Koehl breached their respective duties to Davidson; (3) such breach proximately caused Davidson's damages; and (4) compensable damages occurred. *See Collective Asset Partners, LLC v. Schaumburg*, 432 S.W.3d 435, 440 (Tex. App.—Dallas 2014, pet. denied). Generally, Davidson makes only conclusory statements indicating Heine's and Koehl's "foregoing acts and omissions constitute negligence;" Heine and Koehl "owed a legal duty to [Davidson] not to engage in the foregoing acts and omissions;" their duties to Davidson were breached, which proximately caused [Davidson's] damages. Davidson does suggest, however, that Heine and Koehl owed him duties of good faith and fair dealing, the duty to perform the contract with care, the duty to perform "undertaking" with care, and a duty to cooperate.

The establishment of a duty is a threshold requirement of a negligence cause of action; there can be no liability where there is no duty. *See Vasquez v. Legend Nat. Gas III*, 492 S.W.3d 448, 452 (Tex. App.—San Antonio 2016, pet. denied) (citing *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). Whether a duty exists is a question of law. *Kroger Co.*, 197 S.W.3d at 794. Davidson's conclusory allegations fail to allege how Heine and Koehl owed a duty to him, or upon what legal or common law authority either of them owed him the duties of good faith and fair dealing. *See Vasquez*, 492 S.W.3d at 451, 454 (citing *GoDaddy.com*, 429 S.W.3d at 754) (affirming Rule 91a dismissal and noting, "although we take [plaintiff's] factual allegations as true, we need not afford the same deference to [the] legal conclusions and conclusory statements").

17

Davidson also fails to sufficiently plead the type of "special relationship" out of which a legal duty, such as the duty of good faith and fair dealing, may arise. *See Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet.) (confirming the good faith and fair dealing duty arises only in a "special relationship," marked by shared trust or an imbalance of bargaining power); *see also English v. Fisher*, 660 S.W.2d 521, 522 (Tex. 1983) (declining to extend an implied "covenant of good faith and fair dealing" in contract dispute cases). There is no evidence of a "special relationship" in the record: Koehl and Davidson were only personal friends before the relevant events occurred; Heine and Davidson had never met until May 2023 when the subject events transpired.

Moreover, other than breach of contract, the Economic Loss Rule precludes recovery for tort claims where the economic loss suffered by the plaintiff would already be encompassed in the scope of the contract. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007) (confirming the Economic Loss Rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence"). Considering that rule, Davidson failed to demonstrate how his damages as a result of Heine's and Koehl's alleged "negligence" would not already be encompassed in any damages he may claim as a result of the breach of Heine's agreement to execute a future contract.

To the extent that Davidson's first point of error claimed trial court error in dismissing his negligence claims, it is overruled.

### (6) DTPA

Included in Davidson's TAP are general allegations that Heine and Koehl "engaged in certain false, misleading, and deceptive acts, practices and/or omissions actionable under the Texas

Deceptive Trade Practices–Consumer Protection Act" (DTPA). [7] Here again, just as in his statutory fraud and negligent misrepresentations claims, Davidson only makes conclusory allegations, such as "Defendants engaged in 'an unconscionable action or course of action' to the detriment of [Davidson] . . . by taking advantage of [Davidson] to a grossly unfair degree;" "Defendants' actions constituted knowing and intentional conduct;" "Defendants breached warrant[ies] protected under the DTPA;" and "Defendants engaged in false, misleading, or deceptive acts as provided by 'tie-in' statutes." While we are instructed, upon review, to liberally construe Davidson's petition and take all of Davidson's factual allegations as true, the laundry list of general, conclusory statements Davidson made here will not survive a Rule 91a challenge. *See Minor*, 2021 WL 5218000, at \*2. To the extent that Davidson's first point of error contends the trial court erred in dismissing his DTPA claims, it is overruled.

## B.  Point of error two: Tortious interference claims against Koehl

Pursuant to Rule 91a, the motion to dismiss *must* identify each cause of action to which it is addressed and *must* state specifically the reasons the cause of action has no basis in law, no basis in fact, or both. *See* Tex. R. Civ. P. 91a.2 (emphasis added). Nowhere in Koehl's motion, however, does she comply with the Rule's mandates by identifying and specifically stating the reasons why Davidson's causes of action against her for tortious interference with existing contract and tortious interference with prospective relations have no basis in law or fact, or both.[8] Despite that clear violation of Rule 91a, the trial court dismissed Davidson's "tortious interference" causes of action against Koehl using the phrase "and any other cause of action identified in Plaintiff's Third Amended Petition against Defendant, Linda Koehl."

---

[7] *See* Tex. Bus. & Com. Code Ann. § 17.41 et. seq.

[8] Davidson notified the trial court of Koehl's omissions in his Response to Koehl's Motion.

In ruling on the motion, the trial court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action, together with any exhibits permitted by Rule 59." *Id*. 91a.6; *In re: Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d at 266; *Strickland*, 665 S.W.3d at 742. Thus, whether the trial court conducted a hearing on Koehl's motion or not, the trial court's consideration was limited to Koehl's motion and Davidson's TAP. Because Koehl wholly failed to comply with the Rule, the trial court had no authority to determine whether Davidson's "tortious interference" claims against Koehl had any basis in law or fact—much less dismiss those claims with prejudice. *See In re Farmers Tex. Cnty. Mut. Ins. Co.*, 604 S.W.3d at 426 (Confirming that Rule 91a is strictly construed because of the harsh remedy provided). Accordingly, we sustain Davidson's second point of error that the trial court erred in dismissing the tortious interference claims against Koehl.

## C. Point of error three:

### (1) Attorneys' fees awards under Rule 91a.7

Under Rule 91a.7, "the court may award *the prevailing party on the motion* all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. Any award of costs or fees must be based on evidence." *See* Tex. R. Civ. P. 91a.7 (emphasis added); *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019). "[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* At a minimum, such proof must include evidence of the particular services performed; who performed the services; approximately when the services were performed; the reasonable amount of time required to perform the services; and the reasonable hourly rate for performing the services. *Id.* at 502; *see also Tex. Com. Bank, Nat. Assn. v. New*, 3 S.W.3d 515, 517

20

(Tex. 1991) (confirming affidavits are sufficient evidence, satisfying an award of unliquidated damages, such as attorneys' fees).

Because Rule 91a specifically instructs the trial court may award *the prevailing party* all costs and reasonable and necessary attorney fees *incurred with respect to the challenged cause of action*, and because this Court finds error with the trial court's dismissal of the breach of contract claim as well as the fraudulent inducement claims, we vacate the trial court's award of attorney's fees and remand for reconsideration consistent with this Opinion.

## V.  CONCLUSION

We reverse the portion of the trial court's order dismissing the breach of contract and fraudulent inducement claims against Heine and Koehl, reverse the portion of the trial court's order dismissing the tortious interference claims against Koehl, and vacate the trial court's award of attorneys' fees. We affirm in all other respects. We remand this cause to the trial court for further proceedings consistent with this Opinion.

MARIA SALAS MENDOZA, Chief Justice

July 11, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.